**Earnest WALKER, Appellee,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellant.**

**No. 87–2378.**

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1988.

Decided July 28, 1988.

Rehearing and Rehearing En Banc Denied Oct. 21, 1988.

---

**380**

Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellant.

* The HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Cir-

Robert L. Baker, Little Rock, Ark., for appellee.

Before FAGG, Circuit Judge, SNEED,* Senior Circuit Judge, and MAGILL, Circuit Judge.

FAGG, Circuit Judge.

A.L. Lockhart, Director of the Arkansas Department of Correction, appeals from the district court's order granting Earnest Walker's petition for a writ of habeas corpus. We reverse.

After investigating the death of a woman who was found beaten and shot to death, the State of Arkansas charged Walker with capital murder. The State called Walker's accomplice to testify at Walker's trial. During a recess near the end of the trial, an unknown woman entered the jury room to get a cup of coffee. When she was asked to leave, the woman remarked that she could kill both men. A juror informed the trial court of the jury intrusion. The court admonished the juror to forget the incident, and the trial continued that day.

The court was in recess over the weekend. On Monday another juror informed the court of the jury intrusion. The court then conducted an in camera voir dire of each juror in the presence of both attorneys. During the voir dire, the court and the attorneys questioned each juror about the jury intrusion. The jurors were almost evenly split between those who heard the remark and those who did not; however, all of the jurors clearly and emphatically stated they remained fair and impartial and unaffected by the gratuitous remark.

After the voir dire, Walker's attorney stated he was satisfied from the jurors' response they could base their decision solely on the evidence. Consequently, Walker's attorney declined to request a mistrial. The trial continued, and after its completion, the jury reached a guilty verdict. The Arkansas Supreme Court affirmed Walker's conviction on direct ap-

cuit, sitting by designation.

peal. *Walker v. State,* 277 Ark. 137, 639 S.W.2d 742, 745 (1982).

While Walker was in prison, he learned of the jury intrusion. Walker filed a petition for postconviction relief with the Arkansas Supreme Court. In his petition, Walker asserted several grounds for relief, including claims that related to the jury intrusion. The Arkansas court dismissed the petition because it was not filed within the required time period under Arkansas law. *See* Ark.R.Crim.P. 37.2(c).

Walker then filed this petition for a writ of habeas corpus in federal district court, claiming, among other things, that his rights had been violated by the jury intrusion and his attorney's handling of the incident. *See* 28 U.S.C. § 2254. The district court found Walker's constitutional rights had been violated, including his right to effective assistance of counsel. The court granted the writ and Lockhart appeals.

■ Because Walker failed to obtain a decision in state court on the merits of the constitutional claims he now raises, Walker faces a procedural bar to federal review of his habeas petition. To overcome that bar, Walker must demonstrate cause for his procedural default and actual prejudice. *See Amadeo v. Zant,* —— U.S. ——, 108 S.Ct. 1771, 1776, 100 L.Ed.2d 249 (1988); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Walker contends he has made the cause and prejudice showing by establishing that his counsel was ineffective. Clearly, ineffective assistance of counsel provides cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). We turn to examine whether Walker's counsel was ineffective.

■ Although historical facts may be involved, the ultimate determination of whether counsel rendered ineffective assistance is a question of law that is reviewed de novo. *See Kellogg v. Scurr,* 741 F.2d 1099, 1101 (8th Cir.1984). In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court announced a two-pronged test for establishing ineffective assistance, and the test is "highly demanding," *Kimmel-*

*man v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). First, counsel's performance must have been deficient. Second, counsel's performance must have prejudiced the defense. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65.

In addressing the question of ineffectiveness, we begin with the strong presumption that counsel has performed "within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065; *see id.* at 690, 104 S.Ct. at 2066. The defendant has the burden of overcoming this presumption, *id.* at 689, 104 S.Ct. at 2065, by "proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy," *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586. Further, our review of counsel's performance "must be highly deferential," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, and we will not allow our hindsight to override counsel's sound trial strategy, *id.; Blackmon v. White,* 825 F.2d 1263, 1265 (8th Cir.1987). We evaluate the reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586. When counsel makes a reasoned strategic decision, it is "virtually unchallengeable," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Hayes v. Lockhart,* 766 F.2d 1247, 1251 (8th Cir.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985), even when that strategic decision later proves unwise, *see Blackmon,* 825 F.2d at 1265.

Here, Walker argues his counsel was ineffective in several ways: (1) by failing to inform Walker of the jury intrusion; (2) by failing to ensure Walker's presence at the voir dire; (3) by failing to consult with Walker before counsel decided against requesting a mistrial; and (4) by failing to move for a mistrial. The crux of Walker's ineffectiveness claim is necessarily based on counsel's failure to ask for a mistrial. The other errors that Walker asserts lead into the mistrial issue. Thus, we briefly address Walker's first three claims.

■ We recognize Walker had a constitutional right to be present at the in cam-

era voir dire of the jury. *See Nevels v. Parratt*, 596 F.2d 344, 346 (8th Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 122, 62 L.Ed.2d 79 (1979); *Jackson v. Hutto*, 508 F.2d 890, 891 (8th Cir.1975). Walker's counsel should have informed Walker of the jury intrusion and ensured Walker's presence at the voir dire. Nevertheless, Walker has indicated that had he been present at the voir dire and consulted with counsel, he would have insisted that counsel request a mistrial. Thus, if counsel was not ineffective by declining to request a mistrial, Walker has not been prejudiced here. We turn to the mistrial question.

█ Walker's counsel made his decision not to seek a mistrial only after the attorneys and the trial court had questioned each juror regarding that juror's ability to remain impartial despite the jury intrusion. Defense counsel indicated he was "satisfied with the comments that the jurors ha[d] made in response to the questions that ha[d] been put to them." Further, he stated his belief "that this jury still [could] decide th[e] case, without having been affected by this comment that was made by the [intruder]." After reviewing the record, we believe counsel made a reasoned strategic decision. Absent extraordinary circumstances, a habeas petitioner is bound by the strategic decisions of counsel even when made without consulting the petitioner. *See Murray*, 477 U.S. at 485, 106 S.Ct. at 2644; *Wainwright*, 433 U.S. at 91 n. 14, 97 S.Ct. at 2508 n. 14.

█ Although the district court characterized the individual examinations of the jurors as cursory, the record does not support that characterization. The court and the attorneys examined each juror individually and outside the presence of other jurors. In fact, defense counsel insisted that each juror on the panel be questioned. The court and counsel asked each juror several questions: first, had the juror heard the remark; second, how had the juror reacted to the remark; and finally, had the remark affected the juror's judgment and ability to remain fair and impartial. If a juror had not heard the remark, that juror was still asked about his or her ability to remain fair and impartial.

Walker has not challenged in any meaningful way defense counsel's handling of the voir dire or suggested any avenues of interrogation that were not pursued. Nor has he made any showing the jury deliberations were tainted by the intrusion. Further, the intruder's remark expressed her own personal statement of revenge and did not solicit the jurors to use their power inappropriately.

A "lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of * * * [the] jury." *Blackmon*, 825 F.2d at 1265. Here, through his presence during the questioning, Walker's counsel observed firsthand the demeanor and credibility of each juror. Counsel was in a better position than the district court or this court to measure the attitude of jurors before they entered deliberations and to assess the potential risks and benefits of continuing with the same jury rather than facing a new jury. The trial had all but concluded, and counsel knew how the case had gone on behalf of his client. Based on the record before us, we believe counsel could reasonably conclude that the intruder did not enter the jury room specifically to make the remark. Nor did she make the remark in a dramatic fashion or outburst. In fact, the jurors who knew of the remark gave it no currency. After assessing the situation, Walker's attorney made a reasoned decision not to seek a mistrial. *See Comer v. Parratt*, 674 F.2d 734, 737 (8th Cir.) ("Generally, decisions relating to a reasoned choice of trial strategy * * * are not cognizable in a federal habeas corpus proceeding."), *cert. denied*, 459 U.S. 856, 103 S.Ct. 125, 74 L.Ed. 2d 108 (1982).

Walker's attorney faced a Hobson's choice. There was no definitive answer to the question whether the jury had been compromised by the incident in the jury room. In the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, another attorney might have requested a mistrial and taken the risk of facing a new jury. We, however, cannot conclude counsel was ineffective under constitutional standards

merely because other lawyers may have used another strategy. *See Dyas v. Lockhart,* 771 F.2d 1144, 1149 (8th Cir.1985); *United States v. Lauga,* 762 F.2d. 1288, 1291 (5th Cir.) ("[S]uch decisions do not constitute unreasonable actions simply because 20/20 hindsight and knowledge of the intervening conviction might lead another attorney to opt otherwise."), *cert. denied,* 474 U.S. 860, 106 S.Ct. 173, 88 L.Ed.2d 143 (1985).

In light of the record support for counsel's decision not to request a mistrial and the intangible factors only counsel can evaluate by his active presence at the proceedings, we cannot conclude his performance fell below the "wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Walker has not carried his heavy burden in overcoming the presumption of effectiveness. *See Lawrence v. Lockhart,* 767 F.2d 449, 450 (8th Cir.1985). In our view, Walker's attorney "exercised his best trial judgment in deciding not to ask for a mistrial and should not be [second-guessed] on this decision at this stage of the proceeding." *Nevels,* 596 F.2d at 347.

Accordingly, we reverse the district court's order granting Walker's petition for a writ of habeas corpus.